### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON

**DANIEL L. HALL,**

      **Plaintiff**

**v.**                                                                   **Case No. 2:14-cv-12269**

**WVDOC,**
**JIM RUBENSTEIN, Commissioner,**
**DAVID BALLARD, Warden,**
**DENVER ROSIER, Investigator,**
**JOHN S. DRAKE, Correctional Hearing Officer,**
**ALL DOC STAFF MEMBERS, and**
**ALL MOUNT OLIVE STAFF MEMBERS,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the plaintiff's Complaint (ECF No. 1). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### ALLEGATIONS IN COMPLAINT

The plaintiff's Complaint, which was filed on a form used by the West Virginia state circuit courts, contains a laundry list of conclusory allegations concerning his conditions of confinement when he was previously incarcerated at the Mount Olive Correctional Complex. First, the plaintiff alleges that he was written up for a rule violation on February 12, 2014, after he wrote a letter to former West Virginia Division of Corrections ("WVDOC") Commissioner Jim Rubenstein, and offered to testify about the conduct of another inmate in exchange for "help in my case or at the least MOCC donate me a TV[.]"

(ECF No. 1-1 at 1).  According to the Complaint, the plaintiff was subsequently found guilty of a class one rule violation for "compromising" by Correctional Hearing Officer John S. Drake, who is also named as a defendant.  (*Id.*)  The Complaint further alleges that the plaintiff filed an appeal of his "write up" with the Warden, but had not received a response thereto after 29 days.  (*Id.*)

The Complaint further makes the conclusory allegation that the plaintiff had filed around 20 grievances, all of which had been denied.  (*Id.*)  The Complaint further alleges, in a conclusory manner, that the plaintiff was taking GED/ABE classes, but "they refuse to pay me like all other inmates."  (*Id.*)

The plaintiff further alleges that, although he had filed a previous lawsuit against him, Correctional Officer Crook was still being allowed to handle his food and mail.  (*Id.*)  The Complaint further contends that, on March 5, 2014, the plaintiff was exposed to pepper spray when it was deployed in a neighboring inmate's cell, which caused the plaintiff breathing problems and, although he submitted a sick call request on March 11, 2014 (the day before he drafted and executed the Complaint), no one had spoken to him about it yet.  (*Id.* at 2).

The plaintiff further makes a conclusory allegation that "I announced my religion as Zoro Astrian.  The chaplain refused to acknowledge my religion and my grievances are all denied."  (*Id.*)  He further claims that "his grievances are not being returned at all" and that the "unit team claims they did not receive them."  (*Id.*)  He further contends that, despite being at MOCC since 2010, he was not issued an ID card like all other inmates. (*Id.*)  Finally, the Complaint alleges that inmates on levels four and five of the Quality of Life Program are being treated better than other inmates on the lower levels of the program because they are not handcuffed or shackled.  The plaintiff claims that "[t]his is

discrimination under due process laws, unjust punishment, [and] the use of handcuffs and shackles as [a] reward system." (*Id.*)

The Complaint, which seeks monetary damages and the plaintiff's immediate discharge from WVDOC custody, names the following defendants:   Jim Rubenstein, WVDOC Commissioner; David Ballard, then Warden of MOCC; Denver Rosier, a WVDOC investigator; John S. Drake, Correctional Hearing Officer; "all DOC staff members;" and "all Mount Olive staff members." (*Id.* at 4, 6).

## STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B), the court is obliged to screen each case in which a plaintiff is proceeding *in forma pauperis*, and must dismiss a claim if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A.  In the instant case, both statutes are applicable.

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.  However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

3

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129

S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet
> that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do
> not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the
> purposes of a motion to dismiss we must take all of the factual allegations
> in the complaint as true, we "are not bound to accept as true a legal
> conclusion couched as a factual allegation" (internal quotation marks
> omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff
> armed with nothing more than conclusions. Second, only a complaint that
> states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> * * *
>
> In keeping with these principles a court considering a motion to
> dismiss can choose to begin by identifying pleadings that, because they are
> no more than conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a complaint, they
> must be supported by factual allegations. When there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A.   The plaintiff failed to properly exhaust his administrative remedies prior to filing his Complaint.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §

1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-

condition lawsuits that were threatening to overwhelm the capacity of the federal

judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ

Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some

rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such

limitation is the requirement that prisoners exhaust administrative remedies within the

prison before filing a civil action." *Id.*

4

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures

promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c).   The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life. . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

Non-exhaustion under the PLRA is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).  However, where the allegations in the Complaint, taken as true, demonstrate that the plaintiff has not first exhausted his administrative remedies, courts may dismiss such claims *sua sponte*.  *Id.* at 199, 214-16; *see also Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017); *see also Banks v. Marquez*, 694 F. App'x 159 (4th Cir. 2017) (finding no error in *sua sponte* dismissal where inmate admitted that he failed to exhaust administrative remedies).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief.  *Id.* at 216; *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2. Whether an administrative remedy has been

exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

At the time of the subject incidents, Section 90 of the West Virginia Code provided the procedures that inmates were required to follow when filing a grievance. Specifically, an inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." W. Va. Code St. R. § 90-9-4.1. The grievant is limited to one issue or complaint per form, and the form is to be submitted to the unit manager. W. Va. Code St. R. §§ 90-9-4.2, 90-9-4.3. The unit manager is expected to respond to the grievance within five (5) days. W. Va. Code R. § 90-9-4.5. If the unit manager fails to respond in that time frame, the inmate may treat the non-response as a denial of the grievance and may proceed to appeal the grievance to the Warden, stating that he did not receive a response. *Id.* Accordingly, the inmate is still expected to address his grievance through all levels of the grievance procedure.

In the instant case, the plaintiff alleges in his Complaint that he did not present the facts related to his complaint in the state prisoner grievance procedure. (ECF No. 1 at 3). He further states that he did not do so because "[d]ue to the nature of the complaint, I am seeking 'outside' help. All my grievances no matter for what are being denied." (*Id.*) Thus, it is apparent from the face of the Complaint that the plaintiff filed the instant Complaint before completely exhausting the WVDOC administrative remedy process concerning any of his claims. Moreover, the plaintiff has not alleged or demonstrated that the administrative remedies were unavailable to him. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint should be dismissed in its entirety under 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2(c) for failure to properly exhaust the available administrative remedies.

### B.    The plaintiff's claims for declaratory and injunctive relief are moot in light of his transfer from MOCC.

Since the filing of his Complaint, the plaintiff has been released from the custody of the WVDOC and is now in the custody of the Federal Bureau of Prisons.  Based upon the plaintiff's transfer from MOCC, all forms of declaratory and injunctive relief sought in this court are now moot.

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy.  U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue."   *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his

incarceration there.")  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that any claims for declaratory and injunctive relief made by the plaintiff herein and, in particular, his request for "immediate discharge from DOC custody" must be denied and dismissed as moot.

### C.    The WVDOC and all other defendants in their official capacity are immune from a suit for damages in federal court.

To the extent that the Complaint can be read to be asserting claims against the WVDOC and the other defendants in their official capacities, any claims for monetary damages are barred by the Eleventh Amendment to the United States Constitution. Pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state.  *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).  Moreover, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that neither a State nor its officials acting in their official capacities are "persons" under section 1983.  Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff cannot state any plausible claims for relief against the WVDOC or the other defendants in their official capacities.

**D.    The plaintiff's Complaint fails to state any plausible claim for relief.**

As noted above, in *Twombly* and *Iqbal*, the Supreme Court held that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." The plaintiff's Complaint does not contain allegations sufficient to support any violations of his Constitutional or other rights under federal law. He simply makes a string of conclusory statements.

First, the plaintiff's attempt to name "all DOC staff members" and "all MOCC staff members" as defendants is overly broad and conclusory. Furthermore, his conclusory assertion that he has suffered "retaliation by DOC officials" is insufficient and the Complaint is devoid of specific facts to support such a claim. Moreover, the Complaint fails to allege any specific constitutional violation by any of the named defendants, leaving the court to speculate as to the claims alleged against each defendant.

To the extent that the plaintiff has alleged that he was denied the right to practice his religion, which could be actionable under either the First Amendment's free exercise clause, or under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a)(1)-(2), that claim is not sufficiently pled. At most, the plaintiff alleges that he "announced his religion as Zoro Astrian" and "the Chaplain refused to acknowledge my religion." He fails to allege any facts with respect to the specific religious exercise that was allegedly being burdened by the defendants.

Likewise, the plaintiff's claim that he was incidentally affected by pepper spray being deployed against another inmate, and had not been seen by medical personnel,

despite submitting a sick call request, is not alleged against any particular defendant and, as pled, does not rise to the level of an Eighth Amendment violation. Furthermore, the plaintiff's claim that all of his grievances were denied fails to allege any plausible claim for relief, as there is no right of access to grievance procedures. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

To the extent that the plaintiff has alleged that WVDOC officials have more favorably treated inmates based upon their security classification in the "Quality of Life" program,[1] there is no liberty interest created in custodial classifications, and the plaintiff has not alleged facts demonstrating that the conditions of confinement in administrative segregation constitute an atypical and significant hardship that would support a protected liberty interest under the Fourteenth Amendment sufficient to support a due process claim. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Nor has the plaintiff alleged that he has suffered any serious deprivation of a basic human need sufficient to support an Eighth Amendment violation concerning conditions of confinement in the QOL program.

Furthermore, the plaintiff's Complaint does not sufficiently allege a plausible claim under the Fourteenth Amendment's Equal Protection Clause, under which he must show that he was treated differently than similarly situated inmates. First, mere conclusory allegations of discrimination, without facts to support them, are insufficient to state a claim. Here, the plaintiff simply summarily alleged that level 4s and 5s on the program are treated better than other inmates, without stating facts to support a claim that <u>he</u> was treated less favorably. Moreover, he has not sufficiently alleged how he is similarly

---

[1] The "Quality of Life" ("QOL") program is a behavior-driven progressive incentive system consisting of five levels. Inmates qualify for advancement to the next level by completing behavioral and educational programs. As inmates progress from level 1 up to level 5, they gain additional privileges.

situated to inmates on other levels of the QOL Program, and comparable claims have been found to fail under the Equal Protection Clause. *See, e.g., Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998) (equal protection claim grounded in being treated differently than other prisoners at a different level of administrative segregation fails to state a claim); *Fogle v. Pierson*, 435 F.3d 1252 (10th Cir. 2006) ("it is not plausible that 'there are no relevant differences between [Fogle] and other inmates that might reasonably account for their different treatment.") Consequently, the Complaint fails to state a plausible equal protection claim.

The most specific allegations contained in the Complaint concern the plaintiff's disciplinary proceedings. He alleges that, after writing a letter to WVDOC Commissioner Jim Rubenstein, offering to provide information concerning another inmate in exchange for help with his case or a TV, he was written up with a rule violation for compromising, and was found guilty of the same by Correctional Hearing Officer John S. Drake. He further alleges that he appealed the disciplinary finding to the Warden (presumably David Ballard), but had received no response after 29 days.

To the extent that the plaintiff is seeking monetary damages for the conduct arising out of his disciplinary proceedings, he does not specify the punishment he received as a result of his finding of guilt. If the subject prison disciplinary proceeding did not result in the loss of good time credit, the prisoner has no liberty interest and, thus, no basis for a due process claim because being placed in disciplinary or administrative segregation and the temporary loss of certain privileges, generally, are not sanctions that create an atypical and significant hardship in relation to ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, the plaintiff has not alleged that he lost good time credit and, in fact, has not specified at all what sanctions were imposed as a result of his finding of guilt in the prison disciplinary proceedings addressed in his Complaint.  Nor has the plaintiff specifically alleged any facts to demonstrate how he believes that his prison disciplinary proceeding was improper beyond his conclusory assertion of a "false prosecution."  Accordingly, his conclusory allegations are insufficient to demonstrate that he was subjected to arbitrary punishment by prison officials.  Consequently, the Complaint fails to state any plausible due process claim under the Fourteenth Amendment, or any plausible claim of unjust punishment under the Eighth Amendment.

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint does not contain sufficient allegations that could plausibly give rise to any entitlement to relief.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted.  Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such

13

objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff at the following address:  Daniel Lee Hall, Sr., #09019-088, FCI Butner Medium II, Federal Correctional Institution, P.O. Box 1500, Butner, NC 27509.

July 13, 2018

Dwane L. Tinsley
United States Magistrate Judge

14